NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4045
_____

EDWARD BRUCE,
                    Appellant
v.

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-04211)
District Judge: Hon. Dennis M. Cavanaugh
_____

Submitted under Third Circuit LAR 34.1(a)
June 22, 2012

Before: AMBRO, VANASKIE and ALDISERT, Circuit Judges

(Filed: July 6, 2012)
_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

        Edward Bruce, an former employee of the Port Authority of New York and New

Jersey, appeals the United States District Court for the District of New Jersey's summary

judgment, denying his claim of wrongful termination brought under 42 U.S.C. § 1983.

Bruce contends that there remain genuine issues of material fact regarding: (1) his

employment status at the time of termination; (2) the reasons for his termination; and (3) the cause of the initial denial of his insurance benefits. For the following reasons, we will affirm the judgment of the District Court.

I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in this case, we will revisit them only briefly.

A.

On December 17, 2007, Bruce was hired by the Port Authority, a government employer, as the Senior Manager for Security Operations and Planning. As the Senior Manager, Bruce's duties included "manag[ing] all efforts of Security Operations to ensure the consistency, uniformity and interoperability of all security programs." App. 00322. According to the Port Authority's Tenure of Office Resolution ("TOR"), such managerial employees are subject to discretionary removal from Port Authority service without a formal hearing. Managerial employees include "those holding supervisory or managerial positions or positions of a confidential nature." App. 00051. The Office of the Executive Director Manual ("Manual") explains that managerial employees can be removed for any reason whatsoever. However, the Manual also states that, to ensure continuity in administration, employees should be given 14-day advance notice of termination, during which they can request an opportunity to be heard. Such notice is required only for terminating permanent employees.

All Port Authority employees, regardless of position and unless contracted otherwise, start as probationary employees and can be terminated without notice or a

2

hearing.[1] The probation period lasts for at least 12 months, during which the employee's performance, attendance and general work conduct are evaluated.

On December 29, 2008, the Port Authority informed Bruce that he was terminated as a probationary employee because his behavior created a hostile work environment.

During his employment, Bruce displayed inappropriate behavior while dealing with his staff. He became aggressive with a staff member by shouting and throwing paper at her. Bruce also got into a heated discussion with his immediate supervisor, Louis Barani, disagreeing with the Port Authority's information security policy. Shortly thereafter, Bruce knocked over a model of the World Trade Center and uttered threatening profanities that were overheard by other employees. Other incidents of inappropriate behavior include Bruce's reference to a uniformed officer as "capt. stupid" in an email. App. 00200. After the outbursts, on December 17, 2008, the Acting Deputy Director of the Office of Emergency Management summoned Bruce to a meeting and told him that his recent behavior constituted "threatening and high risk behavior." App. 00381. As a result, Bruce was suspended for two days and was required to participate in counseling before returning to work.

Also, Bruce was absent for 31 days during the first year of his employment. In addition to using both of his personal days and 14 out of his allotted 15 vacation days, he took 15 additional sick days of leave. Superior Barani warned Bruce to "be careful" about taking so many days off during his probationary period. App. 00716.

---

[1] Although Bruce claimed to have received an employment contract, he has not produced one.

3

Bruce was eventually terminated on December 29, 2008, more than a year after his hiring, without prior notice or a hearing. The Port Authority explained that Bruce's probationary period was extended due to his excessive absences and inappropriate behavior, and thus, that he was terminated as a probationary employee.

On January 6, 2009, Bruce received notification from Cobrareserve National Service that he had the option to elect COBRA health insurance coverage and extend his Port Authority health benefits. Bruce did not elect to continue COBRA coverage at that time. On April 17, 2009, Bruce received notice that he could elect to receive COBRA benefits at a reduced rate under the American Recovery and Reinvestment Act of 2009 ("ARRA"). On April 30, 2009, however, Bruce was notified by Ceridian, the Port Authority's insurance provider, that he was not eligible for COBRA's premium reduction under ARRA. Bruce's counsel notified the Port Authority of the problem and Bruce obtained COBRA benefits on June 5, 2009.

B.

On August 18, 2009, Bruce filed a complaint alleging that the Port Authority wrongfully terminated him. On March 4, 2011, the Port Authority filed a motion for summary judgment. The District Court granted the motion on December 20, 2011. Bruce timely appealed.[2]

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's order granting summary judgment. See Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010). Summary judgment is appropriate where there are no genuine issues as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II.

We conclude that the District Court correctly granted summary judgment because there are no genuine issues of material fact regarding whether: (1) Bruce was an at-will employee; (2) his termination was substantially motivated by his inappropriate workplace behavior and excessive absences; or (3) the initial denial of his COBRA ARRA benefits was a mistake. We will therefore affirm the District Court's judgment.

## A.

To bring a § 1983 claim, a plaintiff must demonstrate "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-234 (3d Cir. 2006) (citation omitted). "To have a property interest in a job [,] a person must have more than a unilateral expectation of continued employment; rather [he] must have a legitimate entitlement to such continued employment." Id. at 234 (internal quotation marks and citation omitted). "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question answered by state law." Id. (citation omitted). "Under New Jersey state law, public employees may be discharged with or without cause, unless their positions are otherwise protected, for example, by contract, collective bargaining agreement, civil service tenure, or a fixed term." Siss v. Cnty. of Passaic, 75 F. Supp. 2d 325, 341 (D.N.J. 1999) (citation omitted).

Bruce argues that he was not an at-will employee because, if he had been, the Port Authority would have relied on his at-will employment status, rather than extending his

probationary status to terminate him. Bruce contends also that the language in the Port Authority's TOR is ambiguous enough that there are genuine issues of material fact as to whether managerial employees are entitled to some form of job security, and thus are not at-will employees.

We find no merit in Bruce's arguments. The Port Authority's reliance on Bruce's probationary status in terminating him does not preclude the District Court from finding that Bruce was an at-will employee. We do not see, moreover, any ambiguity in the language of the Port Authority's Tenure of Office Resolution document. It is undisputed that the Port Authority is a public employer and that Bruce was a public employee. Because Bruce was a public employee who failed to produce a contract or meet any other exceptions stated in Passaic, Bruce was an at-will employee under New Jersey state law. It is also undisputed that Bruce was hired as the Senior Manager of Security Operations and Planning.

According to the Port Authority's TOR's definition of managerial positions, Bruce's job title and duties are managerial. Because the Port Authority's TOR states that managerial positions can be terminated for "any cause or reason," App. 00050, Bruce's reliance on the teachings of Woolley v. Hoffman-La Roche, Inc., 491 A.2d 1257 (N.J. 1985), is misplaced. Unlike in Woolley, where the employee handbook was treated as an implied promise that at-will employees would be fired only for cause, see id. at 1258, here, the Port Authority's TOR and Manual reiterate that managerial employees may be terminated for any reason. Guided by both New Jersey state law and the Port Authority's governing documents, we now conclude that the District Court did not err in determining

6

that there is no genuine dispute that Bruce was an at-will employee and therefore had no interest in his employment on which he could bring a § 1983 claim.[3]

B.

Similarly, Bruce failed to establish that there are genuine issues of material fact regarding the Port Authority's motivation for his termination. He contends that the Port Authority terminated his employment as retaliation for speaking out against its repeated failure to implement his recommendations to increase security measures.

The Port Authority presented evidence to support its stated reasons for Bruce's termination, namely his inappropriate behavior and his excessive absences. The Port Authority presented evidence that Bruce: shouted and threw paper at one of his staff members for refusing to follow his instructions; got into a heated discussion and tried to stare down his immediate supervisor; and, shortly thereafter, knocked over a World Trade Center model and cursed audibly. Bruce also used inappropriate and derogatory language in his email communications.

The Port Authority, moreover, presented evidence that Bruce was excessively absent. The record shows that Bruce took two personal days (the maximum), 14 vacation days (out of 15), and 15 sick days within the first year of his employment. Although Bruce denies that Barani ever talked to him about his attendance issues, he admits that Barani told him that he had taken "excessive" absences. App. 00310.

---

[3] Because we conclude that Bruce is an at-will employee, we need not reach the issue as to whether Bruce was a permanent or probationary employee.

7

Because the Port Authority presented uncontested evidence regarding Bruce's inappropriate behavior and excessive absences, we will affirm the District Court's conclusion that Bruce's workplace behavior and excessive absences were the substantial motivating factors for his termination.

## C.

Finally, Bruce has failed to convince us that there are genuine issues of material fact regarding the initial denial of his COBRA benefits. Although he asserts that the Port Authority had intentionally and wrongfully denied him his COBRA benefits, Bruce's only support for this contention is a letter from Ceridian stating: "Dear Mr. Bruce: Your sponsoring employer has indicated that you are not eligible for the COBRA premium reduction under the American Recovery and Reinvestment Act of 2009." App. 00271. The Port Authority has explained that the denial was a mistake on the part of its healthcare provider, Ceridian, which is a separate entity.

Because there was no merit in the wrongful termination claim, we conclude that this COBRA contention is baseless as well. Furthermore, rather than appealing to the U.S. Department of Labor, as instructed by the Ceridian letter, Bruce's attorney contacted the Port Authority about the denial. That Bruce's attorney was able to work with the Port Authority to obtain the benefits through Ceridian supports the Port Authority's explanation that the denial was a mistake.

\* \* \* \* \*

Because we decide that there are no genuine issues of material fact, we will affirm the District Court's grant of summary judgment.

8

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.